UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
MENGRU DAVIS，                    CIVIL ACTION NO.: 16-cv-1354 (ADS)(SIL)

                    Plaintiff,

    -against-


CHING YI CHENG, TERENCE CHENG,
HANG HSIN CHENG, WEI HSIN CHENG,
TAI HSIN CHENG, and WHE-HSIN CHENG,


                    Defendants.
------------------------------------------------------x


# DEFENDANTS' POST-TRIAL MEMORANDUM OF LAW


 

**SONG CHEN [SC-4130]**
**KEVIN KERVENG TUNG, P. C.**
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
Telephone: 718-939-4633
e-mail: schen@kktlawfirm.com
Attorneys for Defendants

0

Defendants, by their attorneys Kevin Kerveng Tung. P.C., submit this memorandum of law in support of their request for a judgment dismissing the instant action after trial.[1]

**Statement of Facts**

Mother-Defendant Ching Yi Cheng ("Cheng") is at the age of 87. She came to United States at the age of 73 (CT 68:20-24). She lived at her private home in Flushing, Queens, which was purchased by her son, Defendant Terence Cheng ("Terence") (CT 67:25-9).

During the time period of Plaintiff's employment, Ms. Cheng had a daytime home attendant provided by a company and paid by government (CT 88:4-20, PT 36:9-11). The daytime home attendant did everything, including all the house chores (CT 88:24-89:2). She washed dishes left from overnight, prepared meals, cleaned floor, purchased grocery, and picked up medicines for Ms. Cheng. The grocery was purchase once a week. Ms. Cheng saw doctor once every three months, setting appointments with doctor at noon. Because at that time her health condition was good, sometimes Ms. Cheng picked up medications by herself, and some other times she asked her daytime home attendant to pick up medications for her (CT 88:24-90:11).

Because Ms. Cheng, living with a heart pacemaker, was afraid to live by herself at night at the subject apartment (CT 57:4-7), her sons recommended her to hire persons to accompany her at night. Therefore, Ms. Cheng had had persons to accompany her at night for years, and Plaintiff was introduced to Ms. Cheng by Ms. Cheng's nighttime companion who was replaced by Plaintiff (CT90:12-25).

---

[1] In this Memorandum of Law, Plaintiff's testimony in trial is referred to as PT, Ching Yi Cheng's as CT, Hang Hsin Cheng's as HT, and Wei Hsin Cheng's as WT.

1

Ms. Cheng hired Plaintiff to be her companion at night time (CT 91:1-6). Ms. Cheng agreed to pay Plaintiff $800.00 a month, which was increased later to $900.00 a month (CT 92:5-93:3).

As Ms. Cheng agreed, Plaintiff used Ms. Cheng's residence as her home, having everything for living in Ms. Cheng's apartment and eating at Ms. Cheng's apartment at night (CT100:18-101:2). She slept on bed in living room at night (PT 29:15-18). She brought her stuff and belongs to Ms. Cheng's apartment (PT29:8-14, 29:19-30:7).

For some work out of companion job scope, Plaintiff would charge Ms. Cheng additional money. Plaintiff charged $20.00 to trim hair for Ms. Cheng (CT 93:9-15). Plaintiff charged $40.00 for clean windows for Ms. Cheng, which Plaintiff did once a year, or twice in total in her two years' work (CT93:16-20). Plaintiff's testimony about these was slightly different. Plaintiff testified that Ms. Cheng paid $20.00 to Plaintiff for her to comb Ms. Cheng's hair. Plaintiff charged $20.00 to clean windows for Ms. Cheng. She cleaned window once a year and two times in total during her two years with Ms. Cheng (PT 26:2-4, 30:20-31:2).

Because Ms. Cheng did not need to pay for her daytime home attendant to do work during the day but Plaintiff would charge Ms. Cheng additional money for additional work, Ms. Cheng almost asked Plaintiff to do nothing but to being with her at night when Ms. Cheng was at home.

Ms. Cheng's sons took turns to take her out for dinner almost every night from 7:00 pm to 9:30 pm, no later than 10:00 pm (CT 95:9-11, 97:6-9). On some other occasions when Ms. Cheng would not go out to have dinner with her sons, Ms. Cheng herself would heat up the food prepared by her daytime home attendant (CT100:8-9). That dinner typically would be in one

2

bowl containing rice with meat and vegetables cooked by daytime home attendant (CT100:10-17, 103:8-14).

Generally, Ms. Cheng's son, Defendant Wei Hsin Cheng ("Vincent") took Ms. Cheng out for dinner on every Monday, Tuesday, and Wednesday, picking up Ms. Cheng at 7:00 pm and taking her back between 9:30 pm and 10:00 pm (WT 120:1-3, 120:4-6; see also, PT 51:15-17). Terence took Ms. Cheng out on some other nights every week (WT 120:11-17), and no less than two nights a week from 7:00 pm to 9:00 pm as Plaintiff testified (PT 36:20-24, 37:17-22).

When Ms. Cheng was out for dinner, Plaintiff would leave Ms. Cheng's home and was permitted to do whatever she wanted to do (CT 97:13-15).

After Ms. Cheng came back home from having dinner, Plaintiff would just be home with Ms. Cheng and did whatever she liked to do (CT 98:7-10).

Ms. Cheng rarely needed hot water to soak her feet (CT 93:4-8).

Plaintiff testified that Ms. Cheng did not set time for Plaintiff to go to bed and Plaintiff was free to choose when to go to bed (PT 40:23-41:3). Therefore, sometimes Plaintiff went to bed earlier than Ms. Cheng. (CT 101:6-7)

Ms. Cheng typically went to bed after 10:00 pm (CT 63:12-15). She took shower by herself because her bathroom was so small that it did not fit two persons. She had a major shower once every 5 days, and did minor cleaning of herself by using towel every day (CT98:11-24).

Ms. Cheng always slept sound. She never woke Plaintiff up or asked her to do something when Plaintiff was sleeping (CT 101:3-5). Plaintiff described this slightly differently. She testified that Ms. Cheng very rarely woke her up when Plaintiff was sleeping. There was a maximum of two times for Ms. Cheng to wake her up (PT 49:13-16).

In the morning, after getting up, Plaintiff did nothing for Ms. Cheng except that once in every several days she would massage Ms. Cheng's stomach for several minutes, if Ms. Cheng ate too much food at previous night (CT 99:18-100:5).  Typically, Plaintiff left Ms. Cheng's home after 7:30 am for her daytime job (CT 99:13-17, 94:21-95:5).

Plaintiff testified that in 2014, besides working for Ms. Cheng, Plaintiff had a daytime job with a company called ABI for 4 to 6 hours a day (PT 32:4-18).  In 2015, besides working for Ms. Cheng, Plaintiff worked on part-time jobs during daytime (PT 32:20-23).

<u>Plaintiff's description of her work</u>

Defendants dispute with Plaintiff about Plaintiff's work provided to Ms. Cheng. Defendants cite the following testimony of Plaintiff for the propose that Defendants will later refer to Plaintiff's testimony in Law and Argument section.

Plaintiff worked for Ms. Cheng at her residence since December 5, 2013 until February 8, 2016, from 5:00 pm until next day 8:00 am every day (PT 10:15-11:10, 23:11-13)  Plaintiff was paid by Ms. Cheng $800 per month in the first year and then $900.00 per month in the second year (PT 20:8-10, 20:21-23, 12:2-7).

Generally, she started her work at 5:00 pm by heating up the food prepared by a daytime home attendant for 5-10 minutes (PT 11:11-12:2)  Plaintiff washed Ms. Cheng's dishes and chopsticks for 10 minutes every day (PT 49:17-22, 51:9-10).

In 2014, the first year of her work, she would bring hot water to Ms. Cheng for her to wash feet and massaged her feet for 30 minutes (PT 12:3-16).

Then Ms. Cheng's son or Plaintiff would take Ms. Cheng to downstairs at the apartment lobby to do exercise for 10 to 20 minutes (PT 12:17-25, 13:16-20).  Then Ms. Cheng chatted

4

with friends at lobby for a while (PT 13:21-14:1). After that, Plaintiff retrieved Ms. Cheng's mails from lobby and took Ms. Cheng back to her apartment (PT 14:22-24).

If on that day Ms. Cheng did not go out to have dinner with her son, Ms. Cheng and Plaintiff would watch TV from 9:00 pm until 11:00 pm (PT 14:25-15:18).

Thereafter, Ms. Cheng would go wash her body for 30 to 40 minutes. In the middle of the shower, Plaintiff would help rubber Ms. Cheng's back (PT 15:19-16:4).

After shower, both Ms. Cheng and Plaintiff would go to bed by 12:00 am (PT 16:15-17:8) Plaintiff slept until 7:00 am and would then massage Ms. Cheng's stomach and feet from 7:00 am until 8:00 am (PT19:6-20:4).

In addition, Plaintiff would went to store with Ms. Cheng to buy grocery occasionally (PT83:5-9), or once a week (PT 83:24-84:3). Plaintiff picked up medications for Ms. Cheng twice a month (PT 84:15-24).

## Law and Argument

### I. Children-Defendants were not "employers" under either FLSA or NYLL.

In determining whether a defendant is an "employer," as defined in FLSA, the Second Circuit has identified four factors to consider, including, "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Wang v LW Rest. Inc., 81 F Supp 3d 241, 253 [EDNY 2015].

District courts in this Circuit have interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA. Id, 258.

In the trial, Plaintiff testified that she got the job to work for Ms. Cheng after one interview by Ms. Cheng (PT 34:18-20, 35:22-36:2). It was Ms. Cheng who decided to hire her,

5

agreed to pay her the amount which Plaintiff also agreed upon, decided Plaintiff's work schedule, and paid Plaintiff. (PT 35:13-21, 36:3-4, 36:6-8)

Plaintiff also testified that during her employment for Ms. Cheng, she only saw three sons of Ms. Cheng: Terrence, Hang Hsin Cheng ("Henry"), and Vincent. Defendant Henry generally visited his mother on Sundays. Henry did not give Plaintiff any direction about her work except once he commented that "you are later for half an hour and I was afraid to leave. If something happened to my mother, what should I do?" (PT 23:25-24:24)

Plaintiff further testified that after Ms. Cheng finished dinner in restaurant, Ms, Cheng or her son Vincent would call her to inform her that they were on way back. Sometimes Vincent would call Plaintiff, and most of the time Ms. Cheng would call (PT 47:22-48:3).

Although Ms. Cheng's children gave money to her on holidays and her birthday expressing their love to her, they did not direct Ms. Cheng how to use the money (CT 65:23-66:4, 66:13-21; HT 78:11-20).

Both Henry and Vincent testified that they were not involved in Plaintiff's employment (WT 118:12-119:5; HT 122:10-24).

In addition, Plaintiff testified that Plaintiff did not know Ms. Cheng's son, Defendant Tai Hsin Cheng (PT 45:4-6, 45:9-12). She never met Ms. Cheng's daughter, Defendant Weh Hsin Cheng (PT 45:7-8).

Ms. Cheng testified that she rarely had contact with her son, Defendant Tai Hsin Cheng after she came to the United States (CT 101:21-102:5). Ms. Cheng's daughter, Defendant Whe Hsin Cheng had not come back from Paris, France to United States for 7 to 8 years before her recent return to United States. She was in Paris, France in 2014 and 2015 (CT 102:6-20).

Therefore, no evidence solicited in the trial shows that the Children-Defendants (1) had the power to hire and fire Plaintiff, (2) supervised and controlled Plaintiff's work schedules or work conditions , (3) determined Plaintiff's rate and method of payment.  The evidence solicited in the trial clearly shows that Plaintiff did not have any conversations with any of the Children-Defendant with regard to her employment.  Therefore, the instant action against Children-Defendants must be dismissed.

Plaintiff's Post-Trial Memorandum of Law ("PTML") first argues that Ms. Cheng's sons jointly employed Plaintiff because it was her sons' recommendation to hire Plaintiff (CT 66:5-12). Considering (1) Plaintiff's own testimony that she was interviewed by Ms. Cheng only and was hired on spot after that interview (PT 34:18-20, 35:13-36:4, 36:6-8) and considering (2) Ms. Cheng's testimony that she was afraid to live by herself at night at the subject apartment (CT 57:4-7), and considering (3) Ms. Cheng's testimony that she had had persons to accompany her at night for years, and Plaintiff was introduced to Ms. Cheng by Ms. Cheng's nighttime companion who was replaced by Plaintiff (CT90:12-25), we can conclude that what Ms. Cheng testified was that her sons recommended her to hire nighttime companion years ago, and thereafter she started to use nighttime companions.  Form the content of both Plaintiff and Ms. Cheng's testimonies, we can conclude that Ms. Cheng did not mean her sons recommend Plaintiff specifically.

Moreover, "[t]here is no authority to support the proposition that providing an employment recommendation constitutes hiring and firing power or that explaining basic legal requirements constitutes control over the rate and method of payment." Lee v Grand Sichuan E. (NY) Inc., 2014 US Dist LEXIS 6752, at *28 [SDNY Jan. 17, 2014, No. 12-CV-08652 (SN)]. Even if Ms. Cheng's sons had ever recommended Plaintiff, it only prove that they did not have

7

the power to hire or fire Plaintiff, and they only could recommend their mother to made a determination.

Second, Plaintiff's PTML argues that because Ms. Cheng's son provided money to their mother on holidays and her birthday, they were employers of Plaintiff. However, simply because a bank or a financial supporter provides funds to a manufacture, that bank or financial supporter does not automatically becomes the employer of the manufacture's workers. Even a manufacture's shareholder who has no power to hire and fire workers, to supervise and control workers' work schedules or work conditions, to determine workers' rate and method of payment is not an "employer" under FLSA and NYLL.

Moreover, Ms. Cheng's children did not give direction to their mother on how to use the money they gave to her (CT 65:23-66:4, 66:13-21; HT 78:11-20). Therefore, Ms. Cheng's children shall not be held liable for the alleged labor law violations of their mother simply because they provided money to their mother.

Third, Plaintiff's PTML argues that Defendant Henry shall be held as Plaintiff's employer. Plaintiff testified that Henry did not give her any direction about her work except once he commented that "you are later for half an hour and I was afraid to leave. If something happened to my mother, what should I do?" (PT 23:25-24:24) Henry's such comments do not amount to a showing of his power or control of Plaintiff's employment. No evidence shows Henry took any discipline against Plaintiff after he made said comment. No evidence shows Ms. Cheng had ever take discipline against Plaintiff for said incident after Henry made said comment. Therefore, Henry does not control Plaintiff's work. Plaintiff's argument fails.

Fourth, Plaintiff's PTML argues that Defendant Vincent shall be held as Plaintiff's employer. Plaintiff testified that after Ms. Cheng finished dinner in restaurant, Ms. Cheng or her

8

son Defendant Wei Hsin Cheng ("Vincent") would call her to inform her that they were on way back. Sometimes Vincent would call Plaintiff, and most of the time Ms. Cheng would call (PT 47:22-48:3). Only the fact that Vincent occasionally called Plaintiff to inform her that his mother was going to be back is legally insufficient to show Vincent was Plaintiff's "employer" under FLSA and NYLL.

Therefore, Plaintiff's claims against Children-Defendants must be dismissed.

## II. Mother-Defendant Cheng was exempt from FLSA

The "companionship services" exemption to FLSA applies to anyone employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves. See, 29 USC § 213 (a)(15)

Until January 1, 2015, the "companionship service" had been defined as " fellowship, care and protection" including "household work related to the care of the aged or infirm person or performance of general household work: Provided, however, that such work is incidental, i.e. does not exceed 20 percent of the total weekly hours worked. Bonn-Wittingham v Project O.H.R. (Office for Homecare Referral), Inc., 2016 US Dist LEXIS 172767, at *8-9 [EDNY Dec. 12, 2016, No. 16-CV-541 (ARR)(JO)].), citing 29 C.F.R. § 552.6 (effective until January 1, 2015).

Activities such as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient, which would be the type of household work that would be exempt work. However, activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a "trashy" house would be general household work or nonexempt work that is subject to the 20 percent time limitation. Bonn-Wittingham v Project O.H.R. (Office for Homecare Referral), Inc., 2016 US Dist LEXIS 172767, at *9 [EDNY Dec. 12, 2016, No. 16-CV-541

(ARR)(JO)], citing U.S. Dep't of Labor, Opinion Letter on Fair Labor Standards Act (March 15, 1995), 1995 DOLWH LEXIS 22, 1995 WL 1032475, at *1 ("DOL Letter").

Under new regulations effective January 1, 2015, only "fellowship and protection" services are exempt from FLSA protection. The "provision of care" to elderly or infirm individuals, such as assistance with the activities of daily living, meal preparation and light housework, is exempt from the FLSA only if "provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek." Bonn-Wittingham v Project O.H.R. (Office for Homecare Referral), Inc., 2016 US Dist LEXIS 172767, at *9-10 [EDNY Dec. 12, 2016, No. 16-CV-541 (ARR)(JO)], citing 29 C.F.R. § 552.6 (effective January 1, 2015).

"The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being." 29 CFR § 552.6 (a)

"The term companionship services also include the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek. The provision of care means to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care)." 29 CFR § 552.6(b)

10

In this action, the parties' dispute on what work Plaintiff did for Ms. Cheng. However, for the argument purpose, even if what Plaintiff stated in trial were true, what Plaintiff had done to Ms. Cheng was exempt from FLSA.

First, to be present with Ms. Cheng in her home or to accompany her when outside of the home to monitor Ms. Cheng's safety and well-being, including accompanying her to do exercise or to go to grocery, falls squarely into the provision of fellowship, and thus, is within "companionship service" exemption to FLSA. See, 29 CFR § 552.6 (a)

Second, in the trial, Plaintiff testified that she worked 15 hours from 5:00 pm to the next day 8:00 am every day, or 105 hours a week.

Plaintiff alleges that every day she heated up the food for 5-10 minutes (PT 11:11-12:2). Plaintiff washed Ms. Cheng's dishes and chopsticks for 10 minutes every day (PT 49:17-22, 51:9-10).

In 2014, the first year of her work, she would bring hot water to Ms. Cheng for her to wash feet and massaged her feet for 30 minutes (PT 12:3-16).

Ms. Cheng would go wash her body for 30 to 40 minutes. In the middle of the shower, Plaintiff would help rubber Ms. Cheng's back (PT 15:19-16:4).

Plaintiff slept until 7:00 am and would then massage Ms. Cheng's stomach and feet from 7:00 am until 8:00 am (PT19:6-20:4).

In addition, Plaintiff picked up medications for Ms. Cheng twice a month (PT 84:15-24).

Because the above alleged work done in 2014 was related to the care of an aged person and did not exceed 21 hours a week, it was exempt from the then regulations under FLSA.

Because the above alleged work done in 2015 was the provision of care attendant to and in conjunction with the provision of fellowship and pretention and did not exceed 21 hours a week, it was still exempt from the new regulations under FLSA effective from January 1, 2015.

Third, because Ms. Cheng already had a daytime home attendant who was paid by government and would do everything and Plaintiff would charge Ms. Cheng for additional work, Plaintiff's testimony that she needed to go pick medications at night, way after Ms. Cheng's doctor appointment at noon, is not credible.  Similarly, Plaintiff's testimony that she needed to massage Ms. Cheng's feet for 30 minutes every day in 2014, massage stomach every morning for 1 hour after she got up at 7:00 am until 8:00 am without even counting her time to groom and dress up for her daytime work, heat up food and wash dishes every day despite her admission of Ms. Cheng's dinning-out, rubber Ms. Cheng's back in the middle of Ms. Cheng's shower despite the small size of the bathroom, is not credible.

Because Plaintiff's work was exempt from FLSA, Plaintiff's FLSA claim against Ms. Cheng must be dismissed.

### III.     Mother-Defendant Cheng was exempt from New York Labor Law.

N.Y. Lab. Law § 2 (16) provides that "domestic worker" shall mean a person employed in a home or residence for the purpose of caring for a child, serving as a companion for a sick, convalescing or elderly person, housekeeping, or for any other domestic service purpose. "Domestic worker" does not include any individual (a) working on a casual basis, (b) who is engaged in providing companionship services, as defined in paragraph fifteen of subdivision (a) of section 213 of the fair labor standards act of 1938, and who is employed by an employer or agency other than the family or household using his or her services, or (c) who is a relative through blood, marriage or adoption of: (1) the employer; or (2) the person for whom the worker

is delivering services under a program funded or administered by federal, state or local government.

In addition, under New York Labor Law, employee does not include any individual permitted to work as companion who lives in the home of an employer for the purpose of serving as a companion to a sick, convalescing or elderly person, and whose principal duties do not include housekeeping.  See, 12 NYCRR 142-2.14 (c)(1)(ii); see also, Severin v. Project OHR, Inc., 2011 U.S. Dist. LEXIS 99839 *, 2011 WL 3902994 [SDNY Sep. 1, 2011] ("The New York State Minimum Wage Act, NYLL § 650 et seq., which includes the NYLL overtime rules, applies to all individuals who fall within the definition of 'employee.' Section 651(5) defines an 'employee' to mean 'any individual employed or permitted to work by an employer in any occupation," but excludes from that definition any individual who: (1) "lives in the home of an employer"; (2) "for the purpose of serving as a companion to a sick, convalescing or elderly person"; and, (3) "whose principal duties do not include housekeeping."); Settlement Home Care v. Indus. Bd. of Appeals of Dep't of Labor, 151 A.D.2d 580 *, 542 N.Y.S.2d 346, 1989 N.Y. App. Div. LEXIS 16886, 121 Lab. Cas. (CCH) P56,804 (2nd Dept 1989)

As demonstrated in previous sections, Ms. Cheng's children neither employed Plaintiff nor had ever used her service for them.  Therefore, Plaintiff is an individual, who was engaged in providing companionship services, as defined in 29 USC § 213, and who was employed by Ms. Cheng, other than Ms. Cheng's family or household using her services.  Consequently, Ms. Cheng is exempt from New York Labor Law.

In addition, in 2014 and 2015, Plaintiff lived in the home of Ms. Cheng for the purpose of serving as a companion to Ms. Cheng, an elderly person, and Plaintiff's principal duties did not

13

include housekeeping. Accordingly, New York's "companionship service" exemption applies, and Plaintiff was not an "employee" of Ms. Cheng under New York Labor Law.

Consequently, Plaintiff's second, third, fourth, fifth, sixth, and seventh claims against Ms. Cheng under New York Labor Law fail.

## Conclusion

For the foregoing reasons, Defendants were not "employers" under FLSA or NYLL, and thus, Plaintiff fails to state a valid cause of action against them. Defendants respectfully request for a judgment dismissing Plaintiff's complaint in its entirety, awarding the Defendants with reasonable attorney's fees, costs, fees and disbursements, and for such other and further relief as the Court deems just and proper.

Dated: Queens, New York
       September 6, 2017

                                      Respectfully submitted,

                                      /s/ Song Chen
                                      Song Chen, Esq. [SC-4130]
                                      Kevin Kerveng Tung, P.C.
                                      136-20 38th Avenue, Suite 3D
                                      Flushing, New York 11354
                                      (718) 939 4633
                                      schen@kktlawfirm.com